BOARD OF EDUCATION OF SCHOOL DISTRICT NO. 45 v. GEORGE W. ROBINSON and Others.[1]

81    305
f83    489

November 12, 1900.

Nos. 12,270—(83).

**Official Bond—Sureties—Execution on Condition.**

It is no defense to an action on an official bond that the sureties signed and executed the same upon the express condition that other persons should be procured to sign before delivery, and that the bond was delivered without a compliance therewith, unless the obligee had notice of such condition.

**Same—Knowledge of Officer of Plaintiff.**

One of the officers of plaintiff school district undertook to solicit and procure persons to sign and execute as sureties the bond of the treasurer thereof, and in doing so obtained information concerning the conditions above mentioned. *Held*, that such officer was not then acting in his official capacity, and plaintiff was not bound by his acts, or by information coming to him while so acting.

**Check on Insolvent Bank.**

A county treasurer, having funds in his hands belonging to plaintiff school district, delivered a bank check therefor to the school district treasurer upon a bank which was at the time engaged in the usual and ordinary banking business. The school-district treasurer accepted the check, presented it to the bank for deposit to his own credit, and received credit therefor on the books of the bank. *Held* equivalent to the delivery and receipt of the money by and from the county treasurer.

**Successive Terms of Office—Defalcation.**

Where a person holds a public office for two or more successive terms, and executes a new bond, with new sureties, for each term, and a defalcation occurs on the part of the officer, the sureties on the bond given for the term during which the defalcation occurred are alone liable.

[1] Reported in 84 N. W. 105.

81 M.—20

### Burden of Proof on Sureties.

Prima facie the sureties on the last bond are liable for such funds as are properly chargeable to the officer, as shown by the books of his office at the time of his retirement, and the burden is upon such sureties to show that the defalcation in fact occurred during a prior term.

### Findings.

Evidence *held* to sustain the findings of the trial court.

Action in the district court for Fillmore county by Board of Education of Preston Independent School District No. 45 to recover on a bond executed by defendant Robinson, as treasurer of plaintiff school district, and by the other defendants as sureties thereon. The case was tried before Kingsley, J., who found in favor of plaintiff. From an order denying a motion for a new trial, defendants appealed. Affirmed.

*B. F. Fowler* and *Childs, Edgerton & Wickwire,* for appellants.

The bond never became effective as a bond to bind the sureties. The delivery of the check to Robinson and its deposit by him was not payment by the county to the school district to any greater extent than the amount of the funds realized by him. The liability of the treasurer, if any, arose under the first bond, and has not been satisfied. Deposit of the funds in a bank by the treasurer during the time of the first bond was neither directed nor authorized by law, and was a conversion of the funds and a breach of the bond. Under G. S. 1894, § 3804, the treasurer is absolutely bound to turn over the money at the end of his term, and is not excused if the funds are lost by burglary or otherwise without his fault. County Commrs. of Hennepin Co. v. Jones, 18 Minn. 182 (199); County Commrs. of McLeod Co. v. Gilbert, 19 Minn. 176 (214); Board of Co. Commrs. v. Tower, 28 Minn. 45; Board of Education v. Jewell, 44 Minn. 427, 429. There being a misapplication of the funds of the county during Robinson's first term, he received only a claim against the bank at the end of his first term as his own successor, and his sureties on his second bond are only liable for the money actually realized on this claim. The fact that Robinson was his own successor makes no difference. Patterson v. Inhabitants, 38 N. J. L. 255; City v. Weber, 29 Mich. 24; Township v. Eggleston, 25 Mich. 36; Mann v.

Yazoo, 31 Miss. 574; Bissell v. Saxton, 66 N. Y. 55, 60; City v. Cully, 72 Ky. 323. It was the absolute duty of Robinson to turn over the money to himself as successor. Nothing but money would answer under the obligation imposed by law. Board v. Jenal, 14 Neb. 254; State v. Hill, 47 Neb. 456; Board of Co. Commrs. of Redwood Co. v. Tower, supra.

Sureties are not responsible for prior defalcations, unless the condition of the bond embrace them. Farrar v. U. S., 5 Pet. 372; U. S. v. Boyd, 15 Pet. 187; Myers v. U. S., 1 McLean, 493; U. S. v. Linn, 1 How. 104; Bigelow v. Bridge, 8 Mass. 275; County of Pine v. Willard, 39 Minn. 125; Warren Co. v. Ward, 21 Iowa, 84, 88; Inhabitants v. Stanley, 47 Me. 515, 518. The liability of sureties is not to be extended beyond the terms of their contract, which is strictissimi juris. City v. James, 92 Ind. 240; Tomlinson v. Simpson, 33 Minn. 443. No far-fetched equities nor overstrained constructions are allowable as against sureties. Ryan v. Williams, 29 Kan. 487; 24 Am. & Eng. Enc. 750. The condition of the bond is prospective. Hetten v. Lane, 43 Tex. 279, 286; County v. Ingalls, 16 Iowa, 81; Vivian v. Otis, 24 Wis. 518. Where all the funds received during the second term or which at any time during that term have been in the treasury have been properly disbursed or accounted for, the sureties are not chargeable for defaults occurring during the preceding term. County of Pine v. Willard, supra. The principles involved are not affected by the fact that the treasurer for the second year was the same person who had held the office the year before. U. S. v. Irving, 1 How. 250; Inhabitants v. Stanley, supra; U. S. v. January, 7 Cranch, 572; Postmaster General of U. S. v. Norvell, Gilp. 106; Mann v. Yazoo, supra; Bissell v. Saxton, supra; Kellum v. Clark, 97 N. Y. 390, 394; Board of Co. Commrs. of Redwood Co. v. Citizens Bank, 67 Minn. 236.

*H. S. Bassett* and *Gray & Thompson*, for respondent.

BROWN, J.

On August 7, 1897, defendant Robinson was elected treasurer of plaintiff school district for the term of one year. He duly qualified as such, and discharged the duties of his office during his term. On August 6, 1898, he was re-elected to such office as his own successor,

and executed and delivered to plaintiff the bond on which this action is founded. The other defendants executed the same with him as sureties. In August, 1899, H. R. Wells was duly elected as Robinson's successor, duly qualified as such, and demanded of him the money, books, and papers belonging to the office. Robinson failed to pay over to Wells the sum of $1,367.68 belonging to the school fund, and this action was brought against him and his sureties to recover it. Plaintiff had judgment in the court below, and defendants appeal from an order denying a new trial.

1. One of the defenses interposed by the defendant sureties is that the bond in question was signed and executed by them upon the express condition that certain other persons should be procured to sign the same before its delivery to plaintiff; that such other persons were not procured; that the bond was wrongfully delivered, and in consequence never took effect as their obligation.

It is undoubtedly the law that if a surety sign a bond or obligation of the nature of the one here under consideration, upon the express condition that the same shall not be delivered until certain others shall be procured to sign and execute it also, and such condition be brought to the knowledge of the obligee before delivery, the delivery, without a compliance with such condition, is ineffectual to give validity to the bond as to such sureties. But such condition must in all cases be brought to the knowledge of the obligee of the bond before delivery. Clarke v. Williams, 61 Minn. 12, 62 N. W. 1125. If the sureties intrust the bond to their principal, and he fails to comply with the conditions, and delivers the bond in violation thereof, it becomes, upon such delivery, a valid and binding contract, if the obligee have no notice of the condition. In this case defendant sureties offered evidence tending to show the conditional execution of the bond in question, and it was excluded by the court. The court required defendants to first prove that plaintiff had notice of such condition. This ruling went to the order of proof, and was not erroneous.

Defendants attempted to show that plaintiff had notice of the condition, but wholly failed. The most that their evidence tended to show in that direction was that one or more of the officers of the plaintiff knew of the condition. But such notice did not come to

the officers in their official capacity, or while engaged in the performance of their duties to plaintiff, and plaintiff cannot be bound thereby. Plaintiff is a public corporation, and is bound by the acts and conduct of its officers only when they are engaged in the duties of their office, and notice to them to bind the corporation must come to them in their official capacity, and while acting within the scope of their authority. Stoner v. Keith Co., 48 Neb. 279, 67 N. W. 311; Independent v. Hubbard, 110 Iowa, 58, 81 N. W. 241; Carroll Co. v. Ruggles, 69 Iowa, 269, 28 N. W. 590; Harvey v. State, 94 Ind. 159; Harrington v. Sixth, 30 Vt. 155; Angell & A. Corp. §§ 309, 339, 659. Todd was not acting in his capacity as officer of plaintiff while engaged in procuring sureties for Robinson's bond, and plaintiff is not bound by information obtained by him in doing so. Bang v. Brett, 62 Minn. 4, 63 N. W. 1067; Schussler v. Board of Commrs., 67 Minn. 412, 70 N. W. 6.

2. Defendants also claim that Robinson never in fact received the money in question or its equivalent, and never became liable therefor.

The facts are that the particular money came from the county treasurer. That official delivered to Robinson, as school treasurer, on July 21, 1898, a check for the sum of $2,891.01 on the Fillmore County Bank, which amount represented public moneys due from the county to the school district. Robinson accepted the check, presented the same to said bank for payment, and received credit as treasurer of plaintiff on the books of the bank for the full amount. He subsequently checked out of said bank all of said money save and except the amount of the shortage sought to be recovered in this action. It clearly appears that, at the time the check was so delivered to defendant Robinson by the county treasurer, the Fillmore County Bank, upon which it was drawn, was insolvent, and unable to pay its debts.

Appellants contend that the acceptance by Robinson of the county treasurer's check, and the transfer of the amount thereof to his credit on the books of the bank, did not amount to a receipt of the money by Robinson to any greater extent than the amount thereafter actually drawn out by him. And, further, that, because of the fact that the bank was insolvent at the time, the county

had lost its money therein, and none passed to Robinson by the check. This contention is not sound and cannot be sustained. There is no evidence that the bank did not have funds on hand to meet the check the day it was delivered. It may have been insolvent,—hopelessly so,—and still have had ample funds on hand to meet this particular check. It appears to have been a "going concern," and was then, and continued for some time thereafter, doing its ordinary and usual banking business. Robinson's acceptance of the check, and obtaining credit for the amount thereof on the books of the bank, was equivalent to the delivery of the money to him. It was not necessary to actually draw the money out of the bank, and then redeposit it. Hare v. Bailey, 73 Minn. 409, 76 N. W. 213. There is no suggestion of fraud on the part of the county treasurer.

3. Defendants further claim that the shortage in question occurred during Robinson's first term of office, and that these defendants, sureties upon the bond for the second term, are not liable therefor. This presents the only serious question in the case.

There is no claim that Robinson had the money in question upon his person at the time of entering upon his second term of office or when he executed the bond sued on. It was then on deposit to his credit in the bank, and he possessed it in no other way. The position of appellants is that at and before the commencement of Robinson's second term the bank was insolvent, and unable to pay its debts, and could not and would not have paid Robinson the balance due him had he called for and demanded it; that at no time after the execution of this bond could the bank have paid Robinson such balance. They therefore insist that the shortage occurred during Robinson's first term, and that they are not liable. The court below found that, at the time of the execution and delivery of the bond, Robinson had in his hands the money in question, and that it was on deposit in the bank. It further found that the bank was at that time insolvent and unable to pay its debts, but refused defendants' request to find that the bank did not have funds sufficient to pay the amount had demand been made therefor.

It may be stated, as a general rule or principle of law, that where a person holds a public office for two or more successive terms, and executes a new bond with new sureties for each term, and a defalca-

tion occurs on the part of the officer, the sureties on the bond given for the term during which the defalcation occurred are alone liable. Throop, Pub. Off. § 205, et seq.; 2 Brandt, Sur. § 543. But where the officer fails to account for and pay over to his successor the funds chargeable to him as shown by his books and final account, the sureties on the last bond are prima facie liable therefor, and, to relieve themselves, must show that the defalcation in fact occurred during a prior term. County of Pine v. Willard, 39 Minn. 125, 39 N. W. 71; City v. Franey, 47 Conn. 76; 2 Brandt, Sur. § 522. In such case the sureties are prima facie liable, and the burden is upon them to show when the defalcation in fact occurred. The only exceptions to this principle are based upon peculiar statutes or some special condition of the bond.

The bond in this case is in the usual form, conditioned on the part of the officer for the faithful performance of his duties, and the payment to his successor, at the expiration of his term, of all money remaining in his hands as treasurer. The contention of appellants on this branch of the case is that the bank was not only insolvent and unable to pay its debts, but that for some time prior to the execution of the bond, and until it closed its doors on August 20, five days after the bond was executed, it had no money on hand sufficient to pay the amount due Robinson, and could not and would not have paid it had demand been made therefor, and they insist that the court below erred in refusing to so find as a fact. If this contention can be sustained, the order appealed from should be reversed. If, as a matter of fact, the bank had no funds, and could not have paid Robinson at the time of the execution of the bond, or between that date and the time of closing its doors, Robinson's shortage in fact occurred during his first term of office, and these defendants are not liable.

We have examined the evidence very carefully and patiently, and find no sufficient reason for disturbing the findings of the learned trial court. The evidence is not direct, certain, or by any means clear or conclusive either way. And, although it would have sustained a finding in support of defendants' contention, it is not so clearly and palpably against the conclusion reached by the court below as to justify interference by this court. The court was not

bound to take the evidence of Todd as absolutely true. It was its duty to fully consider his evidence in connection with the appearance of the witness and other circumstances throwing light on the truth of his statements, and determine, from the whole evidence, the ultimate fact as to the ability of the bank to meet this demand.

Order affirmed.