Benton County Savings Bank, Appellant, v. Joseph Boddicker and V. A. Thoman.

117 407
120 288
117 407
127 366
117 407
135 388

Sureties: CONDITIONAL SIGNING OF BOND: *Evidence.* In an action by a bank against the sureties on a bond, wherein the defense was that defendants signed in reliance upon the representation of the principal that he would not deliver it or borrow any money on it until after other sureties had signed it, the unequivocal testimony of defendants, corroborated by their principal, was ample justification for finding that the bond was signed upon the condition as alleged.

NOTICE OF CONDITION ESTABLISHED. In an action by a bank against two sureties on a bond it appeared that defendants signed on condition that three other sureties would sign before delivery. Plaintiff's cashier testified that he received the bond from defendant's principal with defendant's signatures thereon, and without notice of any conditions, but admitted that when the

bond was prepared the principal spoke of five sureties, including defendants, who would probably sign the bond, and that when the bond was returned by the principal with only defendant's signatures thereon, he, the cashier, asked him if he could not get more, but that he finally said he, "thought it would do as it was." The cashier also admitted that one of the defendants told him before the bond was delivered that he had signed it, but would not be on it alone; but defendant testified that he had told the cashier he had signed on the express condition that the four others would sign. *Held*, that the evidence was sufficient to sustain a finding that plaintiff had such notice as to the defendant who testified that he notified the cashier of the condition on which he signed.

*Same.* As to the other defendant the evidence was sufficient to show that plaintiff had such notice of the facts at the time of receiving the bond as would have led a reasonably prudent person to investigate as to whether its delivery was authorized.

*Testimony admissible.* Evidence of conversations and occurrences between defendants and their principal at the time the bond was signed is admissible.

Waiver: *Pleading and charge.* Where there is evidence that defendants waived their defense growing out of a breach of such condition, but no waiver is pleaded, or in any manner presented to the trial court, except in a request for an instruction, the failure to instruct on the question of waiver is not cause for reversal.

Instructions: making rule by requests: *What may still be objected to.* Where a party requests an instruction on a certain issue, he cannot complain of the submission of such issue, but may challenge the finding of the jury upon the issue thus submitted.

Reversal and Remand: *Adjudication on first appeal.* The questions of law decided upon an appeal cannot be reconsidered or a subsequent appeal in the same case.

*Appeal from Benton District Court.*—Hon. Geo. W. Burnham, Judge.

### Saturday, May 31, 1902.

Action at law against defendants as sureties upon the bond of G. A. Miller & Sons. Verdict and judgment for defendants, and plaintiff appeals.

*Tom H. Milner* and *Cadwell & Walters* for appellant.

*Heins & Heins* and *Gilchrist & Whipple* for appellees.

WEAVER, J.—This case was before us upon a former appeal, and the decision there rendered disposes of some of the questions raised by the pleadings. See 105 Iowa, 548. The partnership of G. A. Miller & Sons were engaged in business at Norway, and in the year 1891 were not only indebted to the plaintiff bank in the sum of several thousand dollars, but were making more or less frequent applications for further accommodations or extensions of credit.

About this time, the bank having requested that a bond be given to secure the existing indebtedness as well as future loans, Miller & Sons, under circumstances hereineafter more fully explained, delivered to it the obligation now in suit, with the signatures of the firm as principal and the defendants, Joseph Boddicker and V. A. Thoman, as sureties thereto subscribed. The bond remained in the possession of the bank some five years before this action was brought thereon, during which time it gave Miller & Sons additional credit. This obligation is in the penal sum of $5,000, and its condition is stated in the following words: "It is the intention and purpose of this instrument or obligation to fully protect and indemnify the said Benton County Savings Bank or its assigns against any and all loss by reason of failure of the said G. A. Miller & Sons to pay their indebtedness now owing or which may be contracted hereafter to the said Benton County Savings Bank. The condition of the above obligation is such that, if the said G. A. Miller & Sons shall pay the full amount of their indebtedness to the said Benton County Savings bank, then this obligation to be void and of none effect; otherwise to remain in full force and virtue." Plaintiff alleges that it accepted this security, and upon faith thereof advanced and loaned to Miller & Sons

large sums of money, of which more than $5,000 is past due and unpaid, and asks judgment against defendants for the full amount of the penalty of the bond. By way of answer the defendants allege that they each signed the bond upon the express condition that it should be signed by five sureties before being delivered to the bank, and before it should become of any validity or effect against them; that it was delivered to the bank without their authority or consent, and that the bank received it with knowlege and notice of said condition upon which their signatures had been obtained. Numerous other defenses are pleaded, but, as we dispose of the appeal upon the issue already stated, it is unnecessary to set them out in detail.

I. Upon the former hearing this court held, in substance, that if the bond in suit was signed by the defendants, Boddicker and Thoman, and by them given to Miller & Sons, with the understanding and agreement that said instrument should not be delivered to the bank or become of any validity until it had been sig_ed by five sureties, and if, without the consent of said defendants, and in violation of said agreement, Miller delivered it to the bank, then the question whether defendants can rely upon such conditional execution as a defense depends upon whether the bank is or is not a holder of said bond in good faith. In other words, if the bond was in fact executed by these sureties upon the condition here pleaded by them, and the bank received it with knowledge of such conditional delivery, or with knowledge of such facts as would have caused a person of reasonable prudence to investigate and discover that the delivery was not authorized, then it is not a holder in good faith, and cannot recover from the sureties. If, however, the conditional delivery by the sureties is not established by the evidence, or if it is so established, and the bank received the bond without notice of the condition, and without knowledge or information to put it upon inquiry, then the alleged violation of

such condition will not avail as a defense to the claim in suit. It was also there decided that, if the conditional delivery be shown, the burden of proof is then cast upon the bank to establish the good faith of its ownership of the bond by a preponderance of the evidence. With this holding, evidently, in view, the district court upon the second trial submitted to the jury certain special findings, which were answered as follows: "Did George E. Miller, at the time of procuring defendant's signatures to the bond in suit, represent to them that there would have to be five certain persons sign the bond before it should be accepted or become binding? Answer. Yes." "Did Joseph Boddicker sign the bond in suit relying upon the representations of Geo. E. Miller that five sureties would sign the same before it should be delivered, become binding, or money be advanced thereon? Answer. Yes." "Did E. E. Hartung have knowledge or notice of the representations or conditions upon which Joseph Boddicker signed said bond? Answer. Yes." "Did the defendant V. A. Thoman sign the bond in suit relying upon the representations of Miller that five sureties should sign the same before it should become binding, or money be advanced thereon? Answer. Yes." "Did E. E. Hartung, plaintiff's cashier, have knowledge or notice of such facts, at the time he received the bond signed by the defendants, as would have caused a person of reasonable prudence to investigate as to whether its delivery was authorized? Answer. Yes."

To fully understand the bearing of these questions and answers, it should be said that E. E. Hartung therein mentioned was cashier and active agent of the plaintiff bank in procuring the bond from Miller & Sons. Taking, then, the rules above adverted to as the law of this case, it is manifest that under the special findings here quoted the judgment below is right, unless it can be said that such findings are without sufficient support in the evidence. The appellant insists there is an

utter absence of such support.  Turning to the record, we
find that the defendants, Boddicker and Thoman, testify
unequivocally that they signed the bond at the request of
Miller upon the express agreement that the instrument
should be signed by five named sureties before its delivery
to the bank.  In this they are corroborated by the testi-
mony of Miller.  If believed by the jury, this evidence is
ample justification for the finding in favor of defendants
as to the existence of the alleged condition.  That fact be-
ing found by the jury, we have next to inquire as to the
finding that the bank received the bond with notice of such
condition.  It must be remembered, in this connection, as
we have already noted, that the burden was upon the bank
to establish its *bona fides* in the receipt of the bond, and
not upon the defendants to negative that proposition.  The
principal testimony by which appellant claims to have es-
tablished its good faith in taking the bond is given by the
cashier, Hartung, who swears that, the account of Miller
& Sons not being satisfactorily secured, he suggested to
Miller the giving of a bond; that Miller assented to the
proposition; that he (witness) prepared the bond in blank;
that Miller took it away, and some days later brought it
back with the signatures of defendants attached, and it
was accepted by the witness in behalf of the bank, and
without notice of any defect therein.  He admits, however,
that at the time the bond was prepared Miller mentioned
five persons, including defendants, Boddicker and Thoman,
whom he could, or thought he could, procure to sign the
instrument.  To this statement the cashier responded that
these persons were all right, and would make a good bond,
or words to that effect.  When Miller returned the bond
with but two sureties, Hartung asked if he could not get
more signers, but, upon Miller's expressing doubt or reluc-
tance, said he "thought it would do as it was."  Hartung
also admits that after Boddicker had signed the bond, and
before it had been returned to the bank by Miller,

Boddicker came to the bank, and mentioned having signed the bond, and said "he would not be alone upon it." Hartung does not pretend to recall the exact language used, but thinks it was in substance as quoted. Speaking of this same interview, Boddicker swears he told Hartung that he had signed the bond on the express condition that the other four sureties proposed would also sign it. The testimony of these witnesses presents more or less conflict, but, if Boddicker is to be believed, the bank had direct and express notice before it received the bond from Miller that said surety's signature had been obtained thereto on condition of its being executed by all five of the sureties whose names were discussed in the first interview between Hartung and Miller on that subject. The jury has found with Boddicker upon this dispute, and, having thus established to the satisfaction of the jury not only that he signed the bond upon condition that it should have no validity until executed by five sureties, and that the bank, through its cashier, had knowledge of such condition before receiving the bond from Miller, his defense is made complete, unless something farther be found in the record to avoid it. Concerning the defendant Thoman, it will be observed that the jury have found not only that he signed the bond conditionally, but that the bank received it with notice and knowledge of facts and circumstances sufficient to put it upon inquiry as to the validity of the instrument. In view of certain admitted facts and the other special findings, we think this verdict is not without evidence to support it. It is conceded by Hartung that when the bond was prepared there was a talk with Miller about having it signed by five sureties. The jury has also found, as we have seen, that before the bond was returned to the bank Hartung was informed that Boddicker's name had been obtained upon the express condition that the signatures of the entire five should be procured. If, then, when Miller came to the bank, and tendered a bond bearing the signa-

tures of but two out of the five proposed sureties, and of
these two signatures Hartung knew that one had been ob-
tained upon a condition which had not been performed, it
would seem that this revelation of Miller's bad faith in the
matter was sufficient to lead Hartung, as an ordinarily
prudent man, to an investigation which would have dis-
closed the condition upon which Thoman also signed it.
To say the least, this combination of circumstances sur-
rounding the making and delivery of the bond is sufficient
to sustain the special verdict now under consideration.

Having reached the conclusion that there is no suffi-
cient reason for setting aside the special findings, it is ob-
vious that plaintiff cannot recover in this action unless we
find in the rulings of the trial court some prejudicial error
which may have influenced or affected the action of the
jury in returning their special verdicts. Upon examination
of the record, we ascertain that nearly all the errors as-
signed and argued have special reference to other issues
than the one we have discussed, and it is therefore unnec-
essary to here consider them. There was an objec-
tion to the testimony of Boddicker and Thoman
concerning their conversation and agreement with
Miller when the bond was signed by them, but we think it
was properly overruled. It was competent for them to
prove that they signed the paper conditionally, and to that
end they were entitled to relate what was said and done
at the time. It is complained also that, even if defendants
did sign the bond conditionally, there was evidence from
which it could be found that this defense had been waived
by one or both of them, and that the jury should have
been instructed upon that point. It is extremely doubtful
if there was any testimony which would justify such
a finding; but it is sufficient to say that no waiver
was pleaded, or in any manner presented to the trial
court, except in a request for an instruction. In view of
the fact that the rule of law announced upon the former

appeal must be regarded the law of this case, we have not undertaken any review of authorities to which our attention is directed by counsel.   The decision then made cannot now be reconsidered.

II.   Upon the trial below, the appellant asked the court to instruct the jury as follows:   "(1)   You are instructed that the single issue presented for consideration and determination is as follows: . Did the plaintiff accept said bond in good faith, for a sufficient consideration, without knowledge or notice of the condition upon which the defendants signed it?   And if you find from the evidence that plaintiff received the bond in suit in good faith, for sufficient consideration, without knowledge or notice of the condition upon which the defendants signed, then your verdict will be for the plaintiff.   * * *   (12)   You are further instructed that the single issue for your determination is as follows:   Did the plaintiff have knowledge or notice sufficient to put a person of reasonable prudence upon inquiry as to the condition upon which defendants signed the bond in suit?   All other issues and controversies made by the pleadings are withdrawn from your consideration or attention."   These requests, as far as they go, are in substantial harmony with the law as given in the court's charge and as stated in this opinion, save in the fact that the jury's attention was not confined to this issue alone.   Plaintiff having asked the court to say to the jury that its right to recover is dependent upon its good faith in receiving the bond, and that knowledge or notice of facts sufficient to put a person of reasonable prudence upon inquiry as to the condition upon which defendants signed the bond would be sufficient to negative the claim of good faith, it cannot be heard to claim that the court erred in so charging, or in submitting that specific finding to the jury.   *Hamilton v. Hartinger*, 96 Iowa, 7; *Duncombe v. Powers*, 75 Iowa, 185; 2 Am. & Eng. Enc. Pl. & Prac. 523; *Railroad Co. v. Latimer*, 128 Ill. 163 (21

N. E. Rep. 7). So far, then, as relates to the issue pre-sented by defendant's allegation that they signed the bond conditionally, that the condition was never performed, and that the bank is not a holder of the instrument in good faith, the plaintiff is in no position to say the charge of the court was erroneous. Indeed, as between plaintiff and defendants and the trial court there is no essential differ-ence concerning the law governing this particular issue. The only material controversy is upon the question of fact, and the appellant, having asked that the jury be permitted to pass upon it, cannot rely upon such submission as re-versible error. It is competent, however, for the appellant to challenge the finding of the jury upon the facts thus submitted. *Railroad Co. v. Latimer, supra.* This it has done, but, as we have already indicated, we think there is no such lack of evidence in support of the findings as calls for our interference with the judgment below. If the bur-den was upon defendants to overcome a presumption of good faith in the bank's possession of the bond in suit, we might reach a different conclusion; but the instrument be-ing found by the jury to have been delivered wrongfully, and without authority, its holder is presumptively charged with notice of all defenses thereto, and it was for the jury to say whether that presumtion had been successfully re-butted. The conclusion upon this vital question being ad-verse to appellant, the judgment of the district court is AFFIRMED.