# GUNDERSON v. HAVANA-CLYDE MINING COMPANY et al.

(133 N. W. 554.)

**Corporations — liability for deceit.**

1. A corporation is liable in an action at law for deceit to the same extent as is a natural person. It was therefore error in the trial court to enter judgment upon the pleadings in favor of the corporation defendant upon the ground that it was not so liable.

**Sale — deceit — measure of damages.**

2. The measure of damages for deceit is the difference between the actual value of the article sold and its represented value; both values being determined at the time of sale, and the damages being limited to those particulars wherein misrepresentations have been made. The purchaser who believes himself defrauded has an election of two remedies. He can rescind, or he can affirm the contract and sue for damages for deceit. In the latter case he cannot recover damages for the failure of the speculation. Those he assumed when he elected to affirm his contract and sue for deceit. He can recover only for the damages incident to the deceit. In the case at bar it was proven that the mine proved to be worthless. No evidence was offered showing damages occasioned by the deceit. *Held*, that the purchasers might possibly have rescinded their contract and recovered their money, but that by electing to sue for damages for deceit they waived that right and affirmed the sales. They are limited therefore to the difference between the actual and represented values of the stock at the time of sale, when purchasers and sellers alike believed the mine would become valuable. Being no evidence of

Note.—The liability of a corporation for fraud of its officers in issuing stock is the subject of a note in 19 L.R.A. 331; and the question of the liability of a corporation for torts or wrongs generally is considered in notes in 5 Am. Dec. 42; 13 Am. Dec. 596; 34 Am. Rep. 495, and 59 Am. St. Rep. 589.

such difference in values, the trial court properly directed a verdict for the defendants at the close of the plaintiff's case.

**Appeal — prejudicial error — exclusion of evidence.**

3. During the trial the trial court excluded certain evidence. As this evidence had it been received, would have only tended to prove the fraudulent representations, and in no manner attempted to supply the proof of damages, such exclusion, if error, was without prejudice.

**Appeal — presumptions — new trial.**

4. This court will not assume that the evidence offered against the remaining defendants would have been the evidence offered against the corporation had it remained in the case. Neither will this court assume that the evidence at a new trial will be the same as at this. Therefore the plaintiff is granted a new trial as against the corporation. In other respects the judgment is affirmed.

Opinion filed November 17, 1911. Rehearing denied December 9, 1911.

Appeal from District Court, Sargant county; *Allen, J.*

Action by M. T. Gunderson against the Havana-Clyde Mining Company and others. From a judgment for defendants, plaintiff appeals.

Affirmed as to defendants Leach and others, and reversed and new trial granted as to defendant corporation.

*F. B. Lambert,* for appellant.

*Wolfe & Schneller* and *J. E. Bishop,* for respondents.

BURKE, J. At the time the transactions hereinafter referred to took place, the defendant mining company was a foreign corporation, of which the three other defendants were directors. About April 1, 1906, the plaintiff and ten other persons purchased capital stock in the mining company from one Canan, also a director, but not a defendant in this action. The ten other purchasers having assigned their claims to the plaintiff, he brings this action for deceit, alleging that the sales were induced by fraudulent statements of Canan and of the corporation through its prospectus. No attempt was made to rescind the contract.

1. The defendants answered separately, admitting the sales, but denying the fraudulent representations. When the case was reached for trial, and after a jury was duly sworn, the defendant mining company moved for judgment upon the pleadings. This motion was granted, and such ruling has been challenged by appeal. The complaint was

in ordinary form, and the sole objection raised to its sufficiency, as we understand it, is the fact that the mining company is a corporation, and, the defendants claim, cannot be sued for deceit under the circumstances, but is liable only to a rescission. We do not think the weight of authority sustains this contention. On the contrary, the better doctrine seems to be that a corporation is in exactly the same position as an individual, and may be sued for deceit. This is especially true in the present case, where it is alleged that the fraudulent statements were contained in a prospectus issued directly by the corporation. N. D. Rev. Codes 1905, §§1480, 6707, 9535, 9536, attempts to place "persons" and "corporations" upon the same footing. While there has been a time when courts pretty generally held that a corporation could not form a fraudulent intent, the modern rule is to the contrary. See Benedict v. Guardian Trust Co. 58 App. Div. 302, 68 N. Y. Supp. 1082; Dorsey Mach. Co. v. McCaffrey, 139 Ind. 545, 47 Am. St. Rep. 290, 38 N. E. 208; Stewart v. Wright, 77 C. C. A. 499, 147 Fed. 321; 10 Cyc. 1220. It was therefore error to order judgment upon the pleadings in favor of the corporation.

2. The trial then proceeded against the three remaining defendants, the defendant Leach being first called for cross-examination under the statute. He identified the prospectus, and said it had been gotten out by the corporation; also, that Canan had been employed by the corporation to sell stock, and that he had the prospectus with him at the time the sale was made; that the directors were not mining experts, and knew nothing of mining; that in April, 1907, the company had employed experts to make an examination of the mines, and said experts reported them to be worthless. He also identified several circular letters sent by the corporation to its stockholders, but as it appears that those were dated and mailed after the sales in suit, and could not have influenced the purchase of the stock, we will not further refer to them. The reports of the experts were introduced in evidence, and received over the objection of the defendants that they were not the best evidence, and will not therefore be further considered, their admission being clearly wrong. The plaintiff testified that Canan had produced to him a piece of ore, and said it had come from the mine; that he had reiterated the claims set forth in the prospectus, and said that the directors were reliable business men of Havana, North Dakota, and had put their own money

into the enterprise; that there was no promoter's stock; that the directors and officers acted without salary, and that the stock was worth par; that 1,000 shares would make him independent for life. It was stipulated that the testimony of the other purchasers would be similar to that of plaintiff, and should be considered as given. The prospectus was offered and received in evidence. It set forth the names and addresses of the officers; stated that the company owned a large number of valuable mines in the Cripple creek mining district; that samples of ore taken from said mines had disclosed always the presence of gold; that most of the samples had run from $3 to $30 per ton—some higher; that there was a large amount of low-grade ore upon the dump, of sufficient value to warrant the erection of an extracting mill, and the money obtained by sales of stock was to be used in erecting such mill; that the mines were valuable. It was then stipulated between the parties that the mining company owned the mines as claimed; that at the time of the sales there had been dug some 1,200 feet of first-class tunnels; that there was a large amount of rock upon the dump that yielded, according to assays made after the sales, from nothing to $1.60 per ton; that such ore was not of sufficient value to warrant its treatment; that in the opinion of competent expert mining engineers the mines were of no value as mines; that there never had been any justification for the erection of an extracting mill upon the property. There was also some testimony as to other sales of stock to the same purchasers, and designated as mill stock, for which the money had been returned by the mining company, but it has no bearing upon this suit.

With the evidence in this condition the plaintiff rested, and the three defendants Leach, Ellingson, and Johnson moved for a directed verdict in their favor. This was allowed, and is also challenged by this appeal. We think the ruling was correct. This is an action for deceit, not for rescission. There is a vast difference between the actions, and this difference must be constantly kept in mind in considering this case. When the plaintiff had reached the conclusion that he had been defrauded, he had his election of two remedies: First, he could rescind upon the grounds that this assent to the contract had never been freely given, and return his stock and recover the money paid by him; or, second, he could ratify the sale, accept his stock with its consequential profits or losses, and maintain an action for damages against his deceivers. In

the second case he refuses to rescind, in effect, and demands that the representations of the sellers be made good in damages. He, the purchaser, assumes all of the risks of the speculation, as he has in effect affirmed the contract of sale. Therefore his damages for the deceit must not include damages occasioned by the failure of the speculation. In this case Gunderson having elected to ratify the sale, instead of repudiating it as he might, assumed the speculation, and would be the winner if the mine made good, and the loser, if the mine failed. His damages would be the difference between what his stock would have been worth at the time of the sale if as represented, and what it was actually worth at that time. Or stated a little differently, he can compel the sellers to make good their representations by paying damages for those things they have misrepresented. We must go back to the day the stock was sold, and determine how much more plaintiff's stock would have been worth had the statements made to him been true. At such time both the buyer and seller believed, or at least hoped, that the mine would be a success. How much less would the plaintiff have been obliged to pay for the stock had he known the truth. Taking up the evidence, and remembering that the plaintiff has the burden of proof, we find that many of the statements of the prospectus were true. They owned mines; they had dug tunnels; they had much low-grade ore on the dock; they believed their mines to be valuable; they had put in their own money; the officers served without compensation; they were reputable business men; they intended the money to be used for an extracting mill and in developing their property. It is not claimed that they wilfully misrepresented the prospects of the mine, but that they made statements without knowing whether the said statements were true or false. An examination of the evidence will disclose, however, two kinds of misrepresentations: First, it may be said that the ore upon the dump was misrepresented. If so, it may further be said that the stock of the plaintiff would have been of greater value had the ore upon the dump been there, for it could be treated and sold. This seems to be true, but, when we come to measure the damages for this false representation, we find much difficulty. If, for example, it had been falsely represented that there was upon the dump $10,000 worth of ore, the plaintiff would be entitled to his proportionate share of the $10,000; but as no evidence was offered as to the amount of ore, or of

its probable value, to base a verdict upon this item would be the wildest kind of guesswork. It may be said that, had the plaintiff known that the ore was of such little value, he would not have bought the stock. The complete answer to that proposition is that the plaintiff by bringing an action for deceit elected to ratify the contract, and did, in effect, buy the stock after he knew the value of the ore. The second representations proven false are those made by Canan to the purchasers that the stock was worth par, and that 1,000 shares would make the purchaser independent. We do not believe, however, that the plaintiff will be heard to say that he believed Canan when he told him the stock was worth par when he was selling it at 15 cents upon the dollar. The purchaser has no right to rely upon the truth of statements so obviously false. The seller must state truthfully the facts upon which he and the purchaser may base an opinion as to values. Having done so, he is not liable for conclusions equally apparent to both. All of the above conclusion are in line with the best decisions of the courts of this country and England, and have been twice before approved by this court. Beare v. Wright, 14 N. D. 26, 69 L.R.A. 409 (103 N. W. 632, 8 Ann. Cas. 1057, a well considered case); Fargo Gas & Coke Co. v. Fargo Gas & Electric Co. 4 N. D. 219, 37 L.R.A. 593, 59 N. W. 1066; Van Epps v. Harrison, 5 Hill, 63, 40 Am. Dec. 314 (very instructive); Page v. Parker, 43 N. H. 363, 80 Am. Dec. 172, 6 Mor. Min. Rep. 544; Smith v. Bolles, 132 U. S. 125, 33 L. ed. 279, 10 Sup. Ct. Rep. 39, 16 Mor. Min. Rep. 159; 4 Sutherland, Damages, 3d ed. p. 3401; Crater v. Binninger, 33 N. J. L. 513, 97 Am. Dec. 737, 10 Mor. Min. Rep. 124. The rule for the measure of damages being well settled in this state, and there being no evidence upon which such damages could be based, it follows that the direction of the verdict for defendant was proper. If it seems a hardship upon the buyers of the stock, we can only reply that they had a chance to repudiate the sales if fraudulent, and recover back their money. This they refused to do, but, on the contrary, kept their stock until further developments proved it worthless, and then demanded that the defendants pay them six times the amount plaintiffs had paid for it. They wished to keep the stock and take all the chances there were of the mine paying out, and then, in case of failure, compel the defendants to make good Canan's representation that the stock was worth par. Only their modesty,

probably, prevented them from demanding that they all be "made independent" according to the promise of Canan. The purchasers' losses were occasioned by sticking to a bad bargain after they knew they had been deceived. For this poor judgment the defendants are not liable. Neither are they liable for the unkindness of nature in placing the mother vein outside of the defendants' property.

3. Appellants have assigned error upon the ruling of the trial court in the admission and exclusion of testimony, but an examination of the record discloses that none of the testimony excluded went to the question of the damages to which the plaintiff was entitled. The evidence, if admitted, would not have supported a verdict any more than the evidence received by the trial court does. Such evidence all went to the question of the falsity of representations made by Canan, and would be merely cumulative. We have already conceded, for the purposes of this decision, that the plaintiff had proved their right to rescind. The exclusion of further evidence of that right did not hurt them. They failed to prove the damages contemplated by law, and, unless the evidence excluded tended to prove such damages, it was immaterial to this decision.

4. Respondent urges in his brief that, in case this court reaches the decision above announced, the error in allowing the motion of the defendant mining company upon the pleadings is without prejudice, for the reason that the plaintiff has failed in the proof as against the other defendants; that it would do the plaintiff no good to be granted a new trial wherein he must fail. This sounds plausible, but this court cannot assume that the evidence offered to a new trial will be the same as was offered here. Nor can we assume that in the trial already had that plaintiff had not other evidence that he would have offered had the mining company remained a defendant.

From the above, it follows that the judgment must be affirmed as to the defendants Leach, Ellingson, and Johnson, and reversed as to the defendant the mining company.

Appellant will recover his costs from the mining company, and the other respondents will recover their costs from the appellant.